In the Matter of the Application of CITIZENS TRUST COMPANY OF UTICA, N. Y., as Committee of the Property of JOHN A. MURPHY, for Instructions as to the Payment of Certain Claims Presented to the Committee.

Supreme Court, Oneida County, July 20, 1929.

*Dunmore, Ferris & Dewey* [*Gilbert Hughes* of counsel], for the committee.

*M. J. Margaret Brahe,* for the veteran.

*Hamilton Ward, Attorney-General* [*George W. Davis, Assistant Attorney-General,* and *Borden H. Mills, Deputy Assistant Attorney-General,* of counsel], for the Utica State Hospital.

*A. S. Thomson,* for United States Veterans Bureau, appearing *amicus curiæ.*

DOWLING, J. On March 28, 1927, Leo M. Doody, as commissioner of charities of the city of Albany, N. Y., instituted proceedings for the commitment of John A. Murphy, the above-named

incompetent person, to a State institution. From the said petition it appeared that said Murphy was a veteran, and that he had previously been cared for at Hospital 81, Veterans Bureau, New York city.

On April 1, 1927, the county judge of Albany county committed said Murphy to the Hudson River State Hospital, at Poughkeepsie, N. Y. A statement of the financial condition of said Murphy, signed by said county judge, indicated that Murphy had no means, so far as known. An investigation by a special agent of the Department of Mental Hygiene of the State of New York disclosed that Murphy had a sister, a Miss Mary F. Murphy, residing at No. 312 Court street, Utica, N. Y.

A short time prior to February 16, 1928, Murphy was paroled from the Hudson River State Hospital and came to his sister's home, at Utica, N. Y. His conduct there displeased said sister. She reported him to the superintendent of the Hudson River State Hospital, who in turn opened negotiations with the Department of Mental Hygiene, at Albany, relative to a transfer of Murphy to the Utica State Hospital. The Commissioner of Mental Hygiene of the State of New York issued an order of transfer to the Utica State Hospital, February 21, 1928. Owing to the fact that the whereabouts of Murphy were unknown, he was not admitted to the Utica State Hospital until May 15, 1928, where he remained until February 5, 1929, when he was released from said institution.

On January 26, 1929, on petition of the superintendent of the Utica State Hospital, the Citizens Trust Company of Utica, N. Y., was appointed committee of the person and estate of said Murphy. It duly qualified and entered upon the discharge of its duties and since then has been, and is now, acting as the sole committee of the person and estate of said Murphy, hereinafter called the incompetent.

After the appointment of the Citizens Trust Company as committee, the following claims were presented to said committee for the care, support and maintenance of said incompetent, and for the support of his wife and minor child, for periods prior to January 26, 1929, viz.: Morton D. Babcock, for board, room, medical attention and clothing for the incompetent and his wife and minor son, totaling $325; Patrick F. Murphy, for board, room, washing, carfare and incidentals for the incompetent, totaling $47.20; the Utica State Hospital, for maintenance of the incompetent from May 15, 1928, to February 13, 1929, at $15 per month, totaling $130.41.

Under the World War Veterans Act of 1924, as amended, the incompetent was granted an allowance by the United States government of sixty-six dollars per month.

At the institution of this proceeding the committee had received from the United States government compensation allowances for the incompetent amounting to $497, and the committee is receiving compensation for said incompetent at the rate of $66 per month.

Owing to the provisions of section 22 of the World War Veterans Act of 1924, as amended, section 667 of the Civil Practice Act of the State of New York, and section 454 of the United States Code, Annotated, the committee being in doubt as to whether it could legally pay said claims, if they proved to be fair and just, makes this application for the instruction and advice of the court in that regard.

Section 22 of the World War Veterans Act of 1924 (U. S. Code, tit. 38, chap. 10, § 454; 43 U. S. Stat. at Large, 613) is as follows: " Assignability and exempt status of compensation, insurance, and maintenance and support allowances. The compensation, insurance, and maintenance and support allowance payable under Parts II, III, and IV, respectively, shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under Parts II, III, or IV; and shall be exempt from all taxation. Such compensation, insurance, and maintenance and support allowance shall be subject to any claims which the United States may have, under Parts II, III, IV and V, against the person on whose account the compensation, insurance, or maintenance and support allowance is payable. * * * "

Section 667 of the Civil Practice Act of the State of New York is as follows: " Exemptions to members in military or naval service. The pay and bounty of a non-commissioned officer, musician, or private in the military or naval service of the United States or the State of New York; a land warrant, pension or other reward heretofore or hereafter granted by the Unted States, or by a State, for military or naval services; a sword, horse, medal, emblem or device of any kind presented as a testimonial for services rendered in the military or naval service of the United States or a State; and the uniform, arms and equipments which were used by a person in that service, are also exempt from levy and sale by virtue of an execution, and from seizure in any legal proceeding."

Counsel for the United States Veterans Bureau, appearing *amicus curiæ*, does not question the fact that all of the above claimants are creditors of the incompetent, but contends that the money in the hands of the committee herein is the identical money paid it by the government, under said World War Veterans Act, for the benefit of the incompetent and that, pursuant to the provisions of law above set forth, the incompetent is entitled to his said allowance, secure from inroads upon it of creditors of the veteran or of his committee; that the award is made the veteran

and paid to the committee, subject only to such conditions as may be imposed upon it by Congress; that Congress has provided that said award shall not be subject to the claims of creditors or to any manner of claim, except those which the United States may have against the person on whose account the compensation allowance is payable.

Counsel for the United States Veterans Bureau further contends that at the time the incompetent was committed to the Hudson River State Hospital the Federal government had no available institution for his hospitalization; that, on that account, the United States Veterans Bureau did pay a certain sum, under contract, to the State of New York, for the care and maintenance of the incompetent in said hospital; that said bureau paid for his hospitalization until he was released from the Hudson River State Hospital on or about February 21, 1928; that thereafter, and in or about March, 1928, the Federal government opened a new veterans hospital, at Northport, L. I. Shortly before the opening of said hospital at Northport, the Department of Mental Hygiene of the State of New York, through Dr. Frederick W. Parsons, Commissioner, and Lewis M. Farrington, secretary, wrote to all State hospitals, to the effect that the Federal government was opening a new Veterans Bureau hospital at Northport, and that the Veterans' Bureau was inquiring concerning the possibility of getting the consent of relatives to the transfer of Bureau beneficiaries to Northport; that correspondence from the Veterans Bureau indicated that if transfer to Northport of veterans were refused, payment of State hospital charges would not be continued; that the relatives and the committee of the above incompetent did not consent to his transfer from the Utica State Hospital; therefore, the Utica State Hospital is not entitled to be compensated for the care of the incompetent out of the moneys in the hands of the committee, whether or not the committee contracted with the said hospital for his maintenance, upon the ground that the incompetent could be cared for at the Northport institution, practically without expense to him or his committee; that under those circumstances, it became the duty of the State to maintain him in one of its institutions, he being a citizen of the State, without charge, at least so far as his allowance from the Federal government was concerned. Counsel for the Veterans Bureau, therefore, contends that if the committee should pay the hospital or any of the other creditors out of the funds in its hands, such payments would be surcharged against it upon its accounting.

Counsel for the State of New York contends that section 40 of the Mental Hygiene Law of the State of New York (Laws of 1927, chap. 426) makes the State a preferred creditor of the incompetent,

and that it was not the intention of the World War Veterans Act of 1924, as amended, to prevent the State from recovering reasonable compensation for the care and maintenance of an insane veteran, while lawfully confined in a State institution. Section 40 is as follows: " The superintendent of any state institution * * * may bring an action or a special proceeding in the name of the institution, to recover for the use thereof; * * * the amount charged and due for the support of any patient or inmate therein, or for actual disbursements made in his behalf for necessary clothing and travelling expenses, and to enforce any liability created by statute for the care and support of the insane, * * *. In all claims of the State upon relatives liable for the support of a patient or inmate, or upon moneys or property held by such patient or inmate, the State shall be deemed a preferred creditor."

Counsel for the State of New York further contends that the State was placed in a dilemma in reference to the above incompetent, in that by the rules and regulations governing admittance to the Federal hospital at Northport, an insane veteran could not be received unless his committee, guardian or relatives consented thereto; that neither the committee, nor the relatives of the incompetent, consented to his transfer to the Northport State Hospital; hence, the State was obliged to maintain said veteran in the Utica State Hospital against its will. Under these circumstances, the State contends that it should not be compelled to maintain said incompetent, free of charge, when his committee has funds sufficient to pay a reasonable charge for the support of said incompetent.

Counsel for the State further contends that the purpose of the allowance made to an insane veteran is to defray the expenses of his support and maintenance.

Counsel for the State further claims that on the 20th of April, 1929, an agreement was made between the State of New York and the above committee, wherein the committee agreed to pay the State the sum of fifteen dollars per month for the period May 15, 1928, to February 5, 1929, for the maintenance by the State of said incompetent.

Personal counsel for the incompetent contends that the committee cannot legally pay any of the claims presented, with the possible exception of the claim of the State for maintenance of the incompetent after the appointment of the committee; that for all maintenance furnished by the State, through the Utica State Hospital, prior to that time, the United States Veterans Bureau, if anybody, is responsible.

Claimants Merton D. Babcock and Patrick F. Murphy have not appeared in this proceeding, and, beyond the fact that they have

presented claims against the committee, their position herein is unknown.

The allowance made to the incompetent herein is exclusively for his own benefit. The State and Federal statutes, above quoted, secure it to him absolutely for his own use, free from the reach of claims of creditors. (*Benedict* v. *Higgins*, 165 App. Div. 611, 615.) This protection to the veteran continues even after money has been received by him, or by his committee or guardian. (*Surace* v. *Danna*, 248 N. Y. 18, 27, 28.) Only the Federal government can legally deduct a claim it has from the allowance made to a veteran.

Of course, while an incompetent veteran is not in a hospital, State or Federal, his committee may lawfully contract for his future support and maintenance.

It seems unjust that the law should prevent the committee of an incompetent veteran from paying a person or agency who or which, without the proper authorization of the committee, has furnished necessary support and maintenance to such veteran, but persons and agencies dealing with incompetent veterans are chargeable with the knowledge that the law jealously protects their allowances against their claims, and they must suffer the consequences. The State of New York is obliged to accept any deranged New York State veteran needing hospitalization into one of its State hospitals, and is obliged to treat and care for him, and, unless the State enters in advance into a contract with the veteran's committee or guardian, it can recover no compensation therefor out of the veteran's government allowance. In a business sense this is a harsh rule, but, in the end, a merciful one from the veteran's viewpoint. If the State maintained all disabled or deranged veterans for the balance of their days, it would still be their debtor.

As to whether or not the claims of creditors, above referred to, are valid is not here for determination and I do not pass upon their validity. The committee is simply seeking advice as to whether or not it should pay said claims, if they prove to be valid claims against the incompetent's estate. I am of the opinion that the committee cannot legally pay the said claims or any part thereof.

The State of New York contends that its claim should be paid for the reason that it made an agreement with the committee, wherein the committee agreed to pay the State's bill of $130.41. This contention is unsound for two reasons, namely, the agreement is supported only by a past consideration, having been made several weeks after the incompetent was released from the Utica State Hospital, and is, therefore, void, and, in any event, the committee could not legally waive the incompetent's rights under the above statutes.

If an incompetent veteran is not in need of hospitalization and is not actually confined in a State or Federal institution, the committee of such veteran should contract in advance and pay for his maintenance out of the money in the hands of such committee. If an incompetent veteran be in need of hospitalization, the committee may consent to his transfer to the Federal government hospital at Northport, L. I., where he can be supported practically without expense to the veteran, or the committee may contract in advance to have the veteran treated in a State hospital or private institution and may lawfully pay for his support out of the veteran's government allowance coming into the hands of such committee.

Furthermore, no matter where the incompetent veteran may be, his committee owes him the duty of providing him, within his means, with necessaries and luxuries which are outside those usually accorded veterans in institutions where privileges and luxuries must necessarily be curbed. These pensions should not be garnered for ungrateful relatives. They are to be spent upon the veteran for his enjoyment. The Federal government should encourage committees of veterans to give them devoted personal attention, and to expend whatever sum is necessary to bring to these unhappy men all of the comforts of life, which they might reasonably enjoy, and in cases where the committee or guardian is diligent in giving the incompetent veteran personal attention, the government should not be niggardly when it comes to compensating them therefor.

Ordered accordingly.