In the Matter of the Estate of Angelo Cerello, Deceased.

Surrogate's Court, Monroe County, May 31, 1935.

*Marvin Dye* [*W. F. Holloran* of counsel], for the administrator.

*M. L. Rogers*, for the claimant.

Feely, S. This decedent, a veteran of the World war, was declared incompetent in 1923. Upon his death in 1933 the committee of his property turned over to the administrator two sums of money, one of $10,612.89, made up of an accumulation of disability benefits received in the veteran's lifetime by his committee from the Federal government under the Veterans' Compensation Act, and the second sum of $1,561, the proceeds of a United States adjusted service certificate paid to his " estate." The distributees are his father, brothers and sisters, all adults, residents of Italy.

A claim was presented by Ursula Giuliano to the administrator for $850, as the balance due for board and lodging, which is said to have been furnished the deceased some time before 1923. It

is now suggested that this claim be compromised at $250 on the theory that these funds are subject to the deceased soldier's debts. It seems to be assumed also that the incompetency had existed at the time this claim accrued, and that the committee had no power to pay them. (*Matter of Citizens Trust Co.*, 134 Misc. 683.)

Counsel for the administrator properly concedes in his brief that the smaller sum, the proceeds of the adjusted service certificate, is exempt from the claims of the creditors of the deceased veteran, under the provision of the act of the Congress declaring that " No sum payable under this chapter to a veteran or his dependents, or to his estate, or to any beneficiary named ₄* * * shall be subject to attachment, levy, or seizure under any legal or equitable process." (U. S. Code, tit. 38, § 618.) The ruling in *Jones* v. *Price* (107 W. Va. 55; 146 S. E. 890) sustains the administrator's position.

As to the larger sum, the accumulation of disability benefits paid to the veteran's committee in the lifetime of the veteran, who was totally and permanently disabled, the matter of exemption depends upon the following provision of the act above cited:

" 454. Assignability and exempt status of compensation, insurance, and maintenance and support allowances.

" The compensation, insurance, and maintenance and support allowances payable under Parts II, III and IV respectively, shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under Parts II, III, or IV; and shall be exempt from all taxation.'

This award was made to the veteran himself; and was received by him in his lifetime through his duly appointed agent or committee; and was for his maintenance and support; and was partly so applied. Had this money been the proceeds of an insurance policy in the hands of a third person named as beneficiary, then, under the wording of the act above quoted, it would have been exempt from the creditors of that third person or beneficiary; and a *fortiori* exempt also from the claims of the creditors of the veteran (*Lind* v. *Miller*, 145 Misc. 477; *Matter of Citizens Trust Co.*, 134 id. 683); but the Supreme Court has held that this exemption does not extend to the heirs of the veteran. (*Pagel* v. *Pagel*, 291 U. S. 473.)

This exemption privilege is one that is personal to the " person to whom the award is made," rather than an attribute of the fund itself without regard to the number of hands to which it might serially pass. Had the Congress intended the exemption of these classes of funds, as well as the " bonus," the act could easily have said so. The omission in such a wholly statutory matter cannot be

supplied by inference or reasoning. The omission is significant also when one recalls that the veteran is now no longer in need of having this means of his support and maintenance kept intact from the claims of his creditors.

In regard to war risk insurance a stronger case can be made out, but even this insurance, paid to an " estate," is liable to the claims of the deceased veteran's creditors. Thus, in *Matter of Ryan* (129 Misc. 248; affd., 220 App. Div. 835) the question arose in 1927 whether the war risk insurance was payable by the veteran's administratrix to his widow as his sole distributee, or whether it should go to the uncles and aunts as persons within the permitted class who by the law of residence would take as in intestacy. This classification was omitted in 1919 when the Congress enacted that the fund should be payable to the " estate of the insured " at the death of the named beneficiary. In deciding the fund should go to the estate of the widow, Surrogate FOLEY said: " The government has elected to ignore the individual beneficiary and has paid ' to the estate.' The local statutes, therefore, of New York necessarily control the distribution of the estate. * * * There is no indication in the statute that any other date but the death of the deceased shall fix the class of distributees." *Matter of Storum* (220 App. Div. 472) is to the same effect. In neither the *Ryan* case, nor in the *Storum* case, was any mention whatever of exemption from creditors; but in reliance on that ruling in the *Ryan* case, Surrogate O'BRIEN held that war risk insurance proceeds in the hands of the veteran's administrator were liable to the claims of those who had rendered him medical services, personal services, and who had delivered him goods and made him loans. (*Matter of Barrett*, 238 App. Div. 817.) Surrogate FOLEY had written in the *Ryan* case that " the fund is to be treated as any other asset of an estate and paid over to the persons entitled under the New York law of intestacy." His colleague applied that statement rather broadly in the *Barrett Case (supra)*, where he wrote: " These moneys are treated as any other asset of the estate would be treated and before any distribution can be made the funeral expenses, administration expenses and debts must be paid." He also cites *Matter of Sabin* (224 App. Div. 702), which dealt with the transfer taxation of such funds before our act of 1928 had discontinued New York's apparent disregard of the declaration in the act of Congress that these funds should be " exempt from taxation." He also cites *Matter of Deegan* (220 App. Div. 784).

Moreover, the present distributees are not exactly dependents of the veteran, nor does the statute contemplate these support moneys as going to any person but to the veteran himself,

It would seem, therefore, that the position taken by the administrator is well founded, and that the compromise should be made, and the $250 paid out of the balance of the disability moneys now in his hands as part of this estate.

Submit for entry, on notice, or voluntary appearance, a decree, in accord with this decision.