[Civ. No. 14160. First Dist., Div. One. Dec. 19, 1949.]

Guardianship of the Person and Estate of JAMES H. BAYLY, an Incompetent Person. DEPARTMENT OF MENTAL HYGIENE, Appellant, v. RICHARD W. BAYLY, as Guardian, etc., Respondent.

Fred N. Howser, Attorney General, and Elizabeth Palmer, Deputy Attorney General, for Appellant.

R. L. Husted for Respondent.

BRAY, J.—Appellant, Department of Mental Hygiene of the State of California, filed in the estate and guardianship of James H. Bayly, an incompetent person, a petition for "Order Instructing Guardian to Pay for Care, Support and Maintenance of Incompetent Person." Thereafter respondent guardian filed an account. The petition and the account were heard at the same time. The court entered a decree denying the petition and settling the account without any allowance as requested by appellant for the support and maintenance of said incompetent. From this decree the department appealed.

## FACTS

There is no controversy as to the facts. Bayly, a war veteran, was committed to Napa State Hospital June 13, 1946, and has been there ever since. On October 9, 1947, approximately 16 months thereafter, respondent was appointed his guardian. His estate consists solely of funds received from the United States government as compensation and disability allowance pursuant to the provisions of the World War Veterans' Act of 1924 [43 Stats. 607, 38 U.S.C.A. § 421 et seq.]. The guardian receives on behalf of the incompetent $60 per month. As of the date of the account, the guardian had received a total of $1,350, and had a balance on hand of $1,314.50. The director of the Department of Mental Hygiene determined the charge for board, care, maintenance and medical attention of the incompetent to be $40 per month, and such charge was regularly made from the date of his admission to the hospital until after the appointment of the guardian. The amount then due was $634.32, and it is this amount which appellant petitioned the probate court to order the guardian to allow and pay. The medical superintendent of the hospital has certified that the incompetent is chronically and permanently insane.

## QUESTION INVOLVED

The sole question is—are moneys received by the guardian of an incompetent war veteran as disability compensation exempt under either the statutes of the United States or of California, from enforced payment for board, care, maintenance and medical attention furnished by a state hospital to the incompetent *prior* to the appointment of his guardian.

## MONEYS ARE EXEMPT

This question has been unequivocally answered in the affirmative in *Estate of Ferarazza*, 219 Cal. 668 [28 P.2d 670], where the facts were practically identical. (The only differ-

ence is that in that case the incompetent's estate did not have sufficient moneys to pay the entire claim of the state hospital, had it been allowed, while in the case at bar the estate has funds in excess of the claim presented. However, the decision in the Ferarazza case was in nowise based upon the shortage of funds, nor was that fact even discussed.)

Appellant concedes that the Ferarazza case is controlling here, but contends that the decision is wrong and did not consider two points which appellant is attempting to raise here. As an intermediate court, we are bound by the Ferarazza decision. Moreover, appellant's contentions neither compel nor suggest a contrary result.

### 1. Is THE STATE A CREDITOR?

The first contention is that the state providing care, etc., to a war veteran should not have the status of a regular creditor as to its claim for that care. The purpose of the exemption statutes, argues appellant, is to protect the veteran from regular creditors so that he can provide board and room for himself. If the state provides them for him, the exemption should not be applied to its claim for reimbursement. The case mainly relied upon by appellant in support of this contention is *In re Lewis' Estate* (1938), 287 Mich. 179 [283 N.W. 21]. There, the incompetent was committed to the state hospital and the care and maintenance provided *subsequent* to the appointment of a guardian of the incompetent. The court held that pension payments from the United States to a dependent, incompetent child of a veteran, were not exempt from a claim for care and maintenance by the state hospital. Such is the law in California as to care and maintenance supplied by the state *after* the appointment of the guardian. (Welf. & Inst. Code, § 6650 (formerly Pol. Code, § 2176) ; Welf. & Inst. Code, § 6655 (formerly Pol. Code, § 2181) ; *Estate of Ferarazza, supra,* p. 669.) The Lewis case did not deal with care and maintenance supplied *prior* to the appointment of the guardian, and hence is not in point.

The only case, other than the Ferarazza case, which discusses claims of this kind made for care and maintenance supplied prior to the guardian's appointment is *In re Murphy's Committee,* 134 Misc. 683 [236 N.Y.S. 343], modified in 227 App.Div. 839 [237 N.Y.S. 448]. The first opinion held that the money from federal pensions in the hands of the committee could not be reached for *any* of the state's claim, in the absence of an express agreement between the committee and the state. This holding was modified to allow the claims which

had *accrued after* the appointment of the committee. The real split of authority is on the question whether a claim for care and maintenance supplied *after* the appointment can reach veteran pension or disability compensation money in the hands of guardians. (109 A.L.R. 433.) While California, like all other states, denies the claim if it accrued *prior* to the appointment of a guardian, it is in the group of states which allows the claim if it accrued *subsequent* to the appointment.

Appellant contends that in the Ferarazza case the court did not consider whether the state was a ''creditor'' and hence that question should be considered here. While the court did not discuss that question, its determination was necessary to a decision in the case.

### 2. DE FACTO GUARDIAN

█ Appellant contends that from the commitment of the incompetent to it until the appointment of the guardian, it was acting as a guardian de facto, and that as the incompetent's estate is liable for care and maintenance supplied *after* the appointment of a guardian, it should likewise be held liable for such care and maintenance supplied by a de facto guardian. Appellant relies on *Guardianship of Giambastiani,* 1 Cal. App.2d 639 [37 P.2d 142]. There it was held that a brother's advances and expenditures for his incompetent brother over a period of 11 years prior to his appointment as guardian, including payment of charges of a state hospital for care of the incompetent, were made as a guardian de facto and reimbursement was allowed out of moneys received from the veterans administration. It was held that the guardian de facto was not ''a creditor'' under the exemption statutes, the court saying (p. 646) : ''A claim of a *de facto* guardian for expenditures on behalf of the ward, set up in his subsequent accounting, is not the claim of a creditor. It is a charge arising during administration of the ward's affairs and estate, the same as if under a *de jure* guardianship. Without a previous *de jure* guardianship, advances made or claims created may not be paid out of funds derived from the veterans' administration. Those properly made by a guardian *de jure* in course of his administration may not be paid from that source because the funds are only exempted from claims of creditors of the beneficiary soldier. (*Estate of Ferarazza,* 219 Cal. 668 [28 P.2d 670].) '' Just what is meant by the last sentence in the above quotation is difficult to understand, but at any rate the court apparently thought its decision was consistent with

the Ferarazza case, which it apparently approved. The court found that the de facto guardianship applied not only to the person but to the estate of the incompetent. The brother not only took charge of the incompetent but also managed his property, paid charges and expenses of his property affairs, supported and maintained him chiefly out of the de facto guardian's own private resources. In the case at bar, the evidence, at most, would support only a de facto guardianship by the state Department of Mental Hygiene of the *person* of Bayly (assuming that mere care and custody of an incompetent in a state hospital is sufficient to constitute a de facto guardianship of the *person*). The department could have been appointed a de jure guardian under section 6660 of the Welfare and Institutions Code, but it was not so appointed. Also the medical superintendent of the state hospital is given certain powers to collect and disperse veterans' pensions under the provisions of section 21 of the World War Veterans' Act of 1924, as amended (38 U.S.C.A. § 450), but there is no evidence that the medical superintendent exercised such powers here. There is no evidence whatever of any attempt by the state to manage his *estate*. The cases in jurisdictions in which money received from the government by incompetent veterans is held liable for such veterans' support and maintenance all hold that this applies only *after* there is a guardian of the *estate*. Moreover, they seem to be based upon the theory that the guardian, in duty and necessity, is obligated to provide support, care and maintenance of the ward, and in the exercise of such duty contracts with the state for such care and maintenance. While, in a sense, an arbitrary distinction has been drawn between care and maintenance supplied to the incompetent veteran by the state *prior* to the appointment of a guardian and that supplied *subsequent* thereto, such a rule is obviously based on the fundamental policy of protecting the incompetent against depletion of his estate by claims accruing before the estate is protected by the watchful eye of a guardian. Having in mind this underlying policy, it is significant that in no state has reimbursement been allowed or provided for care and maintenance provided by the state *prior* to appointment of a guardian of the estate of the incompetent.

The decree is affirmed.

Peters, P. J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 16, 1950.