ESTATE OF BUXTON: STATE DEPARTMENT OF PUBLIC WELFARE, Appellant, vs. PEARSON, Administrator, Respondent.

*October 12—November 14, 1944.*

The cause was submitted for the appellant on the brief of *Blaine M. Linke,* collection and deportation counsel, and *Ralph C. Hartman* of Madison, law examiner, and for the respondent on the brief of *Benton, Bosser, Becker & Parnell,* attorneys, and *David L. Fulton* of counsel, all of Appleton.

BARLOW, J. The facts are not in dispute. Emily Buxton was legally committed to the Outagamie county asylum as an insane person by the county court of Outagamie county on the 15th day of April, 1907, where she remained continuously until her death on March 30, 1942. The balance claimed to be due is $3,374.82, covering a period from June 16, 1919, to the date of death. The estate of Emily Buxton at the time of filing the claim consisted of United States treasury bonds in the amount of $1,100, a bank savings account in the sum of $1,117.15, and a participating trust certificate appraised at $142.73, all items having been accumulated from the proceeds of a pension paid to her guardian for her as the widow of a civil-war veteran, since July, 1932. The administrator does not deny that Emily Buxton was insane when she was committed. She was committed to the county asylum as a chronic insane person under sec. 51.05 (1), Stats., and this claim

against her estate is made pursuant to sec. 46.10 (7), at the rate fixed under sec. 51.08.

The first question to be decided is whether labor and services performed by an individual while confined in an insane asylum can be set off against the care and maintenance charge which the law requires the estate of such person to pay. The superintendent of the asylum was the only witness sworn, who testified that this patient performed certain services which she was mentally and physically capable of performing; that there were no rules or regulations of the institution which permitted credit or payment for such services; and that no patient had ever been credited for any services performed while an inmate of the institution.

Institutions for the care and maintenance of insane persons are constructed and maintained by the state or the county, in this instance by the county. These institutions are required to receive patients when legally committed, and to provide for their custody, care, and maintenance. Insane asylums and hospitals are primarily for the benefit of those whose mental condition is such that it is necessary for them to be confined. Confinement is for the benefit of the individual who is confined as well as for the public at large. They receive such care and treatment as medical science has determined to be in their best interests, which in many instances includes the performance of some type of service. In the absence of a statute authorizing it, no deduction can be made for labor of such persons while so confined. 32 C. J. p. 690, sec. 374; *In re Idelman's Commitment,* 146 Or. 13, 27 Pac. (2d) 305; *Porter v. Eastern Kentucky Asylum for Insane,* 121 Ky. 816, 90 S. W. 263; *In re Peterson,* 157 Or. 696, 74 Pac. (2d) 60, 114 A. L. R. 978. The superintendent of the asylum did not enter into a contract with the patient nor with the guardian of the patient for services, so that any claim must necessarily be based on an implied contract. Any power to create a liability upon the state treasury or county treasury must be derived

from the statutes, and there is no statutory authority authorizing the superintendent of the asylum to employ patients on a salary. 59 C. J. p. 193, sec. 335. The authority of the superintendent to employ necessary help to operate an institution for the care of inmates cannot be construed to create an implied liability on the part of the state or county for services rendered by a patient which are in the interest of his proper care and maintenance. Where an express statutory liability against the state does not exist the individual cannot recover on the theory of an implied contract for services rendered. *Sutton v. United States,* 256 U. S. 575, 41 Sup. Ct. 563, 65 L. Ed. 1099, 19 A. L. R. 403.

All the assets of the estate were accumulated from the proceeds of a pension paid to the guardian of the deceased as the widow of a civil-war veteran. Respondent contends that the money on deposit in the savings account in the amount of ·$1,117.15, being the proceeds of a pension to a civil-war veteran, are exempt from the claim of the State Department of Public Welfare under 38 USCA, sec. 454a, which provides as follows:

"Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. . . ."

Further reference is made to sec. 272.18 (24), Stats., creating the exemptions from execution following:

"*War pension.* All money received by a person, a resident of this state, as pension; compensation, government insurance, or adjusted compensation, back pension, compensation or insurance from the United States government on account of military or naval service, and all other money received by a person on account of military or naval service from the United

States government administered by the veterans' administration whether the same is in the actual possession of such person, on deposit, or loaned."

Whether the Wisconsin statute is intended to broaden the rights of a war-pension beneficiary during his lifetime is not necessary to be decided here, as this beneficiary is deceased. If the only money involved were in a savings account, with the exemption claimed under 38 USCA, sec. 454a, it would then be merely a question of whether a savings account under the conditions constituted an investment, but we have additional funds in a participating trust certificate. This cannot be said to be an investment. The question is squarely presented, whether funds exempt during the lifetime of the person entitled to them ceased to be exempt upon the death of the person under either the federal or state statute.

It has been held in construing 38 USCA, sec. 454a, where a person receiving benefits is alive, the same shall not be exempt from claims of creditors where it has been invested. *Trotter v. Tennesseé*, 290 U. S. 354, 54 Sup. Ct. 138, 78 L. Ed. 358; *McIntosh v. Aubrey*, 185 U. S. 122, 124, 22 Sup. Ct. 561, 46 L. Ed. 834; *Carrier v. Bryant*, 306 U. S. 545, 59 Sup. Ct. 707, 83 L. Ed. 976; *Guardianship of Gardner* (1936), 220 Wis. 493, 264 N. W. 643; *Guardianship of Letourneau* (1941), 238 Wis. 473, 300 N. W. 248. None of these cases deals with pension funds which are a part of the estate of a deceased beneficiary. The purpose of this legislation, both federal and state, is for the protection of the veteran. No reference is made in either statute to the heirs or legatees of the veteran, and nowhere do we find protection for them as against creditors of the deceased. To extend this exemption to the estate of the veteran is to extend it to the heirs or legatees, and if this is done it is difficult, if not impossible, to determine when and where the exemption would cease. An unambiguous statute will not be enlarged by inference or construction. *State ex rel. U. S. F. & G. Co. v. Smith* (1924),

184 Wis. 309, 199 N. W. 954; *Wisconsin P. S. Co. v. Railroad Comm.* (1925) 185 Wis. 536, 201 N. W. 977, 40 A. L. R. 706. There is nothing in either statute exempting the securities and moneys in question after they become a part of the estate of the deceased veteran. It is considered that none of the assets of this estate is exempt under 38 USCA, sec. 454a, or sec. 272.18 (24), Stats.

*By the Court.*—The judgment of the county court is reversed, and the cause remanded with directions to enter judgment allowing the claim.