In re Guardianship of Bemowski: State Department of Public Welfare, Appellant, vs. DeBaker, Guardian, Respondent.

*January 8—February 4, 1958.*

.

For the appellant there was a brief by *Frank P. Fosgate,* collection and deportation counsel, and *Charles C. Lubcke* and *Clarence Simon,* assistant counsel, and oral argument by. *Mr. Lubcke.*

For the respondent there was a brief by *Peickert, Anderson & Fisher,* attorneys, and *John E. Shannon, Jr.,* of counsel, all of Stevens Point, and oral argument by *Mr. Shannon.*

CURRIE, J.   The principal issue before us on this appeal is whether the exemption in favor of a veteran which is provided by sec. 454a, Title 38, USCA, and sec. 272.18 (24), Wis. Stats., applies to a claim for care and support furnished

to an incompetent veteran by the state of Wisconsin while such veteran was confined to a state mental institution and under guardianship.

We will first consider the effect of the federal exemption statute independently of our own state exemption statute. Said sec. 454a, Title 38, USCA, at the times material to this appeal, provided in part as follows:

"Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."

In *Lawrence v. Shaw* (1937), 300 U. S. 245, 57 Sup. Ct. 443, 81 L. Ed. 623, 108 A. L. R. 1102, the United States supreme court considered the application of the exemption provided in sec. 454a to pension benefits of a veteran, which benefits were attempted to be subjected to tax. In the opinion of the court, Mr. Chief Justice HUGHES made this significant statement (300 U. S. at p. 250):

"These payments are intended primarily for the maintenance and support of the veteran."

The state of Wisconsin, in furnishing the incompetent veteran in the instant case with care and maintenance in a state mental institution, was providing him with the very support his benefits from the Veterans Administration were intended to cover. The state had no option but to accept him into such institution and provide such support when he was committed thereto by proper court order. *Estate of Buxton* (1944), 246 Wis. 97, 99, 16 N. W. (2d) 399. There is no statute which would enable the state to refuse admittance until such support was paid for in advance, or on a day-to-day basis. Private individuals or institutions are under no

such burden and, if they provide a veteran with board or lodging on credit they become creditors of their own volition. In so caring for this incompetent veteran the state was engaged in a governmental function.

Therefore, in interpreting sec. 454a, the question is whether congress intended to classify the state as a *"creditor"* within the terms of such statute. The courts of California, Michigan, and New York in a number of well-reasoned opinions have held that congress did not intend to classify states, which have provided support in state institutions to incompetent veterans under guardianship, as *"creditors"* within the meaning of sec. 454a. *Guardianship of Bayly* (1949), 95 Cal. App. (2d) 174, 212 Pac. (2d) 587; *Estate of Lewis* (1938), 287 Mich. 179, 283 N. W. 21; *Auditor General v. Olezniczak* (1942), 302 Mich. 336, 4 N. W. (2d) 679; *Matter of Simpson* (1946), 270 App. Div. 902, 61 N. Y. Supp. (2d) 529; and *Matter of Weinberg* (1952), 201 Misc. 489, 110 N. Y. Supp. (2d) 130.

We adopt the reasoning of the Michigan court so well stated by Mr. Chief Justice WIEST in *Estate of Lewis, supra,* as follows (287 Mich. at pp. 186, 187, 283 N. W. at p. 24) :

"We are not here concerned with actions by creditors seeking to turn the pension to satisfaction of their demands, but only with the question of reimbursement of the state for care and maintenance. Certainly the pension protective law does not intend the fund for the welfare of the beneficiary and then, under restrictions thereof, after receipt by the beneficiary, prevent employment thereof for care and support of the pensioner. . . .

"The state, under humanitarian legislation, has assumed the care and maintenance of the insane pension beneficiary and, by statute, has provided means and measures for reimbursement and we do not think that, under such circumstances, congress intended to consider the state in the class of barred creditors. The exemption in the pension law serves its purpose in holding that in the hands of the guardian and under order of the court, of which the beneficiary is a ward,

the money is not exempt from employment in reimbursing the state, under statutory provisions, for the expense of care and maintenance of the ward."

In considering the problem of whether congress intended to include states seeking reimbursement for support furnished to a veteran in the category of *"creditors,"* as such word is employed in sec. 454a, we deem it to be immaterial whether a particular state under its own law is required to proceed as a creditor to enforce such reimbursement. For example, in state A the reimbursement is granted under equitable principles of restitution and quasi contract whereby no debtor-creditor relationship exists, while in state B the state pursuant to state statute is required to proceed as an ordinary creditor to effect such reimbursement. We believe it would be highly unreasonable to hold that congress intended there would be no exemption under sec. 454a as to state A's right of reimbursement, but that such exemption would bar state B from enforcing its claim for reimbursement. The case of *Estate of Sletto* (1937), 224 Wis. 178, 272 N. W. 42, holds that our state, when it seeks reimbursement for support provided a mentally incompetent person, is by statute made a preferred creditor. However, the opinion in such case also points out that courts of equity at one time enforced such reimbursement under the doctrine of *parens patriae* without the state being deemed a creditor.

In the case of *In re Flanagan* (D. C. Columbia 1940), 31 Fed. Supp. 402, the United States district court for the District of Columbia held that sec. 454a did not exempt veterans' disability payments in the hands of the committee for an insane veteran from enforcement of a divorce decree for past-due alimony in behalf of the veteran's divorced wife. In its opinion in that case the federal court stated (p. 403) :

"The judgment for alimony is not a debt in the ordinary sense. It is an obligation of a higher order. The purposes of the exemption statute in that case [*Schlaefer v. Schlaefer*

(1940), 112 Fed. (2d) 177, 130 A. L. R. 1014] and the purpose of the exemptions in this were to protect not only the recipient of the benefits but to afford some degree of security to the family and dependents of such recipient. The enactment of these statutes had as their purpose, at least in part, to insure the public against the pauperism of the recipient of the benefits or that of his dependents. A divorced wife is a dependent no less in the status created by the divorce decree than in that fixed by the marriage bond. Congress did not intend to put such benefits beyond the reach of a divorced wife. The exemption affords security for the disabled veteran when his earning power is lost or impaired. It works a like protection of his dependents and lessens the prospect of his and their need for public care and support."

The case of *Schlaefer v. Schlaefer* (1940), 71 App. D. C. 350, 112 Fed. (2d) 177, which is referred to in the above quotation, involved an exemption statute enacted by congress for the District of Columbia that exempted the proceeds of disability life insurance from process to enforce "any debt or liability" against the insured. The court there held that the exemption was not applicable to a claim of a divorced wife for permanent alimony against the insured former husband. The case is noteworthy because the opinion of the court of appeals for the District of Columbia was written by Mr. Justice RUTLEDGE, later a member of the United States supreme court.

This court held in *Guardianship of Gardner* (1936), 220 Wis. 493, 501, 264 N. W. 643, that a divorced wife of an incompetent veteran, who sought to enforce payment of support money for children under a divorce judgment against veterans' benefit funds in the hands of the guardian, was not a *"creditor"* within the meaning of sec. 454a. In the later case of *Saunders v. Saunders* (1943), 243 Wis. 94, 9 N. W. (2d) 629, the court had sec. 62.13 (9)(d), Wis. Stats. 1941, under consideration. This statute exempted money due any pensioner from a municipal pension fund

from any process, or court order, to enforce *"any claim or demand"* against the pensioner. Nevertheless, the court held such exemption was not applicable in a quasi-garnishment proceeding brought to enforce alimony and child support payments due under a divorce judgment. The opinion is very short, and the reason advanced for the result is that the pension was intended as much for the benefit of the pensioner's family and dependents as it was for him.

Inasmuch as the United States supreme court has held that the exemption provided by sec. 454a was intended primarily for the maintenance and support of the veteran, the further purpose of protecting the veteran's dependents must be deemed a secondary purpose. Therefore, if the exemption does not apply as to a judgment for alimony, which provides support to a dependent former wife, *a fortiori* it should not apply to support furnished a mentally incapacitated veteran by the state. As the federal court well pointed out in its opinion in *In re Flanagan, supra,* sec. 454a was enacted in part to insure the public against the pauperism of the veteran.

Counsel for the respondent guardian place their chief reliance upon *Guardianship of Letourneau* (1941), 238 Wis. 473, 300 N. W. 248. The facts in that case closely parallel those of the instant case, except that the funds in the hands of the guardian of the incompetent veteran, which had been derived from veteran's benefits, had been invested by the guardian. This court held that the exemption of sec. 454a did not apply to such invested funds, although it would if the funds had not been invested. Whatever was said in the opinion in that case about the exemption of 454a applying to uninvested veterans' benefit funds was *obiter dictum* unnecessary to the result. It is significant that no authorities were cited in support of such obiter.

We consider that the authorities hereinbefore cited laid down the proper rule to be followed in this case, and that

there is no sound reason of public policy why we should feel bound to adhere to the dictum of the *Letourneau Case.* Counsel for the Department of Public Welfare in oral argument asserted that all the county courts of the state but two, which have since passed upon the question of the application of sec. 454a to claims of reimbursement by the state for support furnished to the veteran or his dependents against uninvested veterans' benefit payments in guardianships, have held the exemption of sec. 454a inapplicable. Of the two county courts which have held to the contrary, one is the county court whose judgment is before us on this appeal. Therefore, not only is the dictum in the *Letourneau Case* against the great weight of authority, but it also has not received any wide acceptance by the courts of this state having jurisdiction over guardianships.

This state has enacted the United States Uniform Veterans' Guardianship Act (sec. 319.50, Wis. Stats.). Sec. 319.50 (14) of such act expressly authorizes the guardian of a veteran to apply Veterans Administration benefits in his hands for the support of such veteran. Sec. 319.26, which is not part of such act, makes it mandatory upon the guardian to use all personal estate of the ward for the support of the latter. Incompetent veterans are expressly mentioned in such latter statute. Sec. 319.20 (2) further provides:

"Any guardian heretofore or hereafter appointed for any such inmate [of a state or county hospital or asylum], who, having property of his ward in his possession or control exceeding $200 in value, fails to pay within three months after receipt of any bill thereof for the ward's care and support from the state department of public welfare, shall upon application of the collection and deportation counsel of said department, forthwith be removed."

We would have a highly absurd result, if although under the above-mentioned statutes appearing in ch. 319, Wis. Stats., it is mandatory upon a guardian of an incompetent

veteran to apply Veterans Administration benefits toward the support of such incompetent while an inmate of a state hospital, and the guardian is subject to removal if he fails to do so, the state, nevertheless, could not subject such benefits to its claim to reimburse for such support where the guardian does fail to perform such duty. The guardian is the creature of the state, and it is only because of such state action that the Veterans Administration paid the veteran's benefits to the guardian instead of the veteran. The state, in paying the cost of the maintenance and care supplied to the veteran while in the state mental hospital, was in effect doing that which it was the duty of the guardian to do. Surely congress never intended that a state should not under such circumstances be entitled to reimbursement.

Congress in 1957, by the enactment of Public Law 85–56, 71 U. S. Stats. 88, completely revised and consolidated the laws relating to veterans' benefits, and yet saw fit to make no substantial change in the wording, hereinbefore quoted, of sec. 454a, renumbered sec. 3001. In view of the long history of state court decisions permitting reimbursement by states in situations like that in this case, we deem the failure to make such a change to be most significant. We interpret this as indicating tacit approval by congress of the construction placed upon 454a by such state court decisions.

It is our considered judgment that sec. 454a does not apply to the instant claim of the state for reimbursement for the support furnished to the incompetent veteran Bemowski after the appointment of the guardian; and we so determine. The dictum to the contrary in the *Letourneau Case* is expressly overruled.

We turn now to the issue of whether the provision of sec. 272.18 (24), Wis. Stats., is applicable to render the veteran's benefit payments in the hands of the guardian exempt from the claim of the state for reimbursement. We quote the applicable portions of sec. 272.18 as follows:

"No property hereinafter mentioned shall be liable to seizure or sale on execution or on any provisional or final process issued from any court or any proceedings in aid thereof, *except as otherwise specially provided in the statutes*:

. . .

"(24) *War Pension*. All money received by a person, a resident of this state, as pension, compensation, government insurance, or adjusted compensation, back pension, compensation or insurance from the United States government on account of military or naval service, and all other money received by a person on account of military or naval service from the United States government administered by the Veterans Administration, whether the same is in the actual possession of such person, on deposit, or loaned." (Italics supplied.)

We consider the words, *"except as otherwise specially provided in the statutes,"* to be the key words in so far as the instant appeal is concerned. Counsel for the department contends that there are other statutes which do provide otherwise. One of these is sec. 46.10 (2), Wis. Stats. This statute reads in part as follows:

"Any patient in any charitable or curative institution of the state including the Wisconsin General Hospital or of any county or municipality, in which the state is chargeable with all or a part of the patient's maintenance, except tuberculosis patients mentioned in ch. 50 and sections 51.27 and 58.06 (2), or heretofore or hereafter committed or admitted to any such institution, *and his property and estate, including his homestead,* . . . shall be liable for such patient's maintenance . . . except that when it shall be shown that a husband, wife, widow, or minors, or an incapacitated person may be lawfully dependent upon such property for their support, the court shall give due regard to this fact and release all or such part of the property and estate from such charge that may be necessary to provide for such persons." (Italics supplied.)

The forerunner of sec. 46.10 (2) was sec. 604*q*, Wis. Stats. (Suppl. 1906), which the court had before it in *John-*

*son v. Door County* (1914), 158 Wis. 10, 147 N. W. 1011. Sec. 604*q*, unlike present sec. 46.10 (2), did not contain the words *"including his homestead."* However, sec. 2983, forerunner of present sec. 272.20, did exempt the homestead from debts. The court there held under such sec. 604*q* the entire property and estate of an insane ward is made liable for his support and maintenance in a state mental institution, and that there is no exemption of the homestead. Sec. 604*q* also provided that a judge might in his discretion refuse to enter judgment for reimbursement for the support of the patient in any case where the parent, wife, or child of the patient was dependent upon the patient's property for support. A provision of similar import is set forth in the above-quoted portions of present sec. 46.10 (2). The court further held in the *Johnson Case* that this was the only applicable statutory provision for exemption in enforcing the liability imposed by sec. 604*q*, and that the general exemption statutes now found in present ch. 272, Stats., had no application.

Counsel for the guardian seek to distinguish the *Johnson Case* on the ground that the guardian there had voluntarily used the proceeds from the sale of the ward's homestead to pay for his support while in a state mental institution, and the ward sought to hold the guardian liable for so doing. It is true that the court could have rested its decision on the narrow ground that the guardian stood in the shoes of the ward, but did not do so. Even if the holding of the court in the *Johnson Case* on the issue of exemption be deemed obiter, we consider it to be sound law which should be adhered to.

We are satisfied that such holding in the *Johnson Case* is in keeping with the intent of the legislature as indicated by the amendment made by ch. 514, Laws of 1953, to sec. 46.10 (2), Wis. Stats. Such amendment among other things added the words *"including his homestead"* so as to make certain that homesteads of patients may be subjected to liability for claims of reimbursement on the part of the

state. Legislatures have customarily shown more zeal in extending exemptions to homesteads than any other asset of debtors. Why then did the legislature by this 1953 amendment only mention homesteads and not personal property having an exemption under sec. 272.18? The answer is fairly obvious. While sec. 272.18 contains the above-noted exception, *"except as otherwise specially provided in the statutes,"* sec. 272.20 establishing the homestead exemption does not. Undoubtedly it was for this reason that the legislature did not think it necessary to make any reference to personal property exempted by sec. 272.18. Therefore, this is not a proper case in which to invoke the rule of statutory construction of *"expressio unius est exclusio alterius"* (the expression of one thing excludes another).

We have no hesitancy in determining that the exemption of sec. 272.18 (24), Wis. Stats., is inapplicable to the funds in the hands of the guardian in the instant case.

However, there still remains the further issue of whether the state may enforce its claim for reimbursement against the funds now in the possession of the guardian as to the $107.26 expended in the support and care of the veteran at the Winnebago State Hospital during the period of January 5 to January 25, 1955, prior to the appointment of the guardian.

The case of *In re Murphy's Committee* (1929), 134 Misc. 683, 236 N. Y. Supp. 343, closely parallels the facts of the instant case. In New York a "committee" is appointed for incompetent persons, usually a single individual or fiduciary corporation, who performs the same functions as a guardian in this state. Murphy was a veteran who was supported at state expense in state mental institutions. New York, like Wisconsin, had no option but to accept an incompetent veteran into its mental institutions and support him even though no contract existed to pay the expense thereof. Finally a committee was appointed for him and the funds

in the hands of the committee consisted of moneys realized from an allowance of $66 per month granted the veteran under the Federal World War Veterans Act of 1924. The state made claim against the committee for reimbursement, the larger portion of which accrued prior to the appointment of the committee. The court held that both the federal exemption and state exemption statutes applicable to veterans' benefits prevented the court from ordering payments of the state's claim against the funds in the hands of the committee. The opinion, however, indicated that, if the committee had made a contract to pay for such support as it was being rendered by the state, the claim would have been allowed. On appeal, the appellate division reversed that portion of the order which prevented the committee from paying that part of the state's claim which arose after the appointment of the committee. *In re Murphy's Committee* (1929), 227 App. Div. 839, 237 N. Y. Supp. 448. The rationale of the appellate division's holding appears in the following extract from its opinion:

"In our opinion claims reasonable in amount and based in good faith on the support and maintenance of the incompetent person after the appointment of the committee, may be deemed to be obligations incurred by the committee, even though there be no express agreement by the committee in advance to pay them, and may, therefore, be paid out of the funds received from the government under the provisions of the World War Veterans Act [1924]."

Subsequently, the California court was faced with a similar problem in *Estate of Ferarazza* (1934), 219 Cal. 668, 28 Pac. (2d) 670, under facts also closely paralleling those of the instant case. The state made claim for reimbursement for support furnished the incompetent veteran while in a state mental institution as against funds in the hands of the government derived from the veteran's disability allowance under the World War Veterans Act of 1924. The trial court

allowed the claim against such funds as to the support furnished after appointment of the guardian, but disallowed that part of the claim accruing prior to such appointment. The California supreme court affirmed in reliance upon the precedent of *In re Murphy's Committee*, 227 App. Div. 839, 237 N. Y. Supp. 448.

Thereafter, a similar problem was presented to the California court of appeals in *Guardianship of Bayly, supra,* as to whether the claim of the state for reimbursement could be ordered paid out of funds in the hands of the guardian of the incompetent veteran for support in a state mental institution furnished prior to the appointment of the guardian. The court held that the state was not a *"creditor"* within the federal exemption statute and cited the Michigan case of *Estate of Lewis, supra.* However, upon the precedents of *In re Murphy's Committee* (N. Y. App. Div.), *supra,* and *Estate of Ferarazza, supra,* it was determined that the state's claim accruing prior to the appointment of the guardian should not be paid out of the veteran's benefit payments in the hands of the guardian. We quote from the court's opinion as follows (95 Cal. App. (2d) at p. 178, 212 Pac. (2d) at p. 590) :

"The cases in jurisdictions in which money received from the government by incompetent veterans is held liable for such veterans' support and maintenance all hold that this applies only after there is a guardian of the estate. Moreover, they seem to be based upon the theory that the guardian, in duty and necessity, is obligated to provide support, care, and maintenance of the ward, and in the exercise of such duty contracts with the state for such care and maintenance. While, in a sense, an arbitrary distinction has been drawn between care and maintenance supplied to the incompetent veteran by the state prior to the appointment of a guardian and that supplied subsequent thereto, such a rule is obviously based on the fundamental policy of protecting the incompetent against depletion of his estate by claims accruing before the

estate is protected by the watchful eye of a guardian. Having in mind this underlying policy, it is significant that in no state has reimbursement been allowed or provided for care and maintenance provided by the state prior to appointment of a guardian of the estate of the incompetent."

Upon the precedents of *In re Murphy's Committee* (N. Y. App. Div.), *supra; Estate of Ferarazza, supra;* and *Guardianship of Bayly, supra,* we determine that the state is not entitled to have that part of its claim, which accrued prior to the appointment of the guardian, paid out of the funds now in the hands of the guardian realized from the veteran's benefit payments.

We base our conclusion, that the state cannot enforce its claim for support furnished prior to the appointment of the guardian against pension benefits in the possession of the guardian, upon the federal veterans' exemption statute rather than that of the state. This is because of our holding that sec. 46.10 (2), Wis. Stats., renders inapplicable the exemption of sec. 272.18 (24) as to any claim of the state for reimbursement, and this is so regardless of the time when such claim accrued. It was the duty of the guardian to disburse the veteran's benefit payments as received for the current support of the veteran. However, to require the guardian to divert such benefit payments to pay a claim of the state which had accrued prior to the appointment of the guardian might jeopardize the present support of the veteran, and thus defeat the underlying policy of congress in enacting sec. 454a.

*By the Court.*—That part of the order appealed from is reversed, and cause remanded for further proceedings not inconsistent with this opinion. No costs are to be taxed on this appeal.