Chojnacki Estate.

Argued October 1, 1959. Before JONES, C. J., BELL, JONES, COHEN and BOK, JJ.

*John D. Killian, III,* Deputy Attorney General, with him *Peter G. Schaaf,* Counsel, *Harry J. Rubin,* Deputy Attorney General, and *Anne X. Alpern,* Attorney General, for Commonwealth, appellant.

*Daniel J. Parent,* with him *Joseph H. Kifer,* and *Arthur E. Ashton,* for Veterans Administration, appellee.

OPINION PER CURIAM, December 30, 1959:

John S. Chojnacki, a mentally incompetent veteran, is now and has been confined at Farview State Hospital, Waymart, Pa., since prior to May 5, 1951. On that date Joseph F. Mackrell, Esq., was appointed by the Orphans' Court of Erie County as the guardian of Chojnacki's estate, and from that date until December 31, 1957 the said guardian paid the *full* cost of Chojnacki's care and maintenance at the State Hospital to the Commonwealth of Pennsylvania.

After January 1, 1958 the guardian refused upon demand to pay the *full* cost of Chojnacki's care and maintenance, apparently upon the ground that the Veterans Administration opposed payments for such purpose in excess of $40 per month. On May 15, 1958 the Commonwealth of Pennsylvania petitioned the Orphans' Court of Erie County for an order directing the aforesaid guardian to pay the *full* cost of Chojnacki's

care and maintenance. At that time the guardian had in his possession $3,661.62, accumulated by reason of payments by the Veterans Administration of a non-service-connected disability pension of $78.75 each month. The *full* cost of maintenance of Chojnacki at the State Hospital is $138 per month.

Upon presentation of the Commonwealth's petition the court below granted a rule to show cause why such order should not be made with a direction that notice of the presentation of such petition be given to the Veterans Administration. The Veterans Administration filed an answer stating, in effect, that the balance of monies in the incompetent's estate over and above payments of $40 per month for his care and maintenance was retained in the estate to be used for his "future welfare; to provide for his incidental needs as a patient in the Commonwealth hospital; to accumulate a fund to be used for the rehabilitation of the veteran in the event he is discharged from the hospital, and for payment of costs of administration of his estate."

The court below dismissed the Commonwealth's petition and from such order this appeal was taken.

The order is affirmed upon the following excerpts from the opinion of President Judge ROBERTS of the court below:

"The Commonwealth in this proceeding seeks reimbursement for the full cost of current maintenance of an incompetent veteran as a patient in a state institution. The veteran is the beneficiary of a non-service-connected disability pension from the United States Government, in the monthly amount of $78.75. The full cost of maintenance varies and is now approximately $4.45 a day. Payment at that rate is demanded from the funds in the hands of the guardian. The Veterans Administration interposes no objection to payment by the guardian of not more than $40 a month

towards the cost of maintaining the incompetent pensioner. It does, however, oppose payment in excess of that amount, contending that the difference between the partial reimbursement to the Commonwealth of $40 per month and the veteran's total monthly benefits should be retained in his estate to provide for his incidental needs as a patient, and to accumulate a fund to be used for his future welfare and rehabilitation in the event of his discharge from the Commonwealth's hospital.

. . . .

"We must now determine whether payment covering the Commonwealth's full cost of currently maintaining the veteran is to be directed from pension funds, in the hands of the guardian. The answer rests upon the unique nature of the fund and the statutory protections accorded such benefits during the lifetime of the veteran. It is clear that pension benefits paid by the Veterans Administration to a veteran for total non-service-connected disability are a governmental gratuity, and the grant of such allowance to the veteran creates no vested right. The gratuity '. . . may be redistributed or withdrawn at any time in the discretion of Congress:' Lynch vs. U. S., 292 U. S. 571, 577. Careful consideration of the special nature of the gratuity itself and the statutory exemptions created for the protection of such funds during the lifetime of the veteran and the applicable provisions of the regulations of the Veterans Administration, convinces us that the Commonwealth may not now compel satisfaction of its claim for the full cost of maintenance out of the proceeds of pension funds in the hands of the guardian.

"Both the state and federal governments have assumed certain responsibilities for the welfare of an incompetent veteran. Within their respective exclusive areas each is supreme, and neither may successfully require the other to render services or make contribu-

tions beyond those which are lawfully mandated by their respective governing authorities.

"The Commonwealth has undertaken to make available to this incompetent citizen the hospitalization which he is presently receiving. This care he is entitled to receive, irrespective of his inability to make payment and without reference to whether he is the recipient of a federal disability pension. The federal government has and is providing the incompetent veteran with a gratuitous monthly allowance all or any part of which '. . . may, in the discretion of the Administrator, be paid to the chief officer of the institution wherein the veteran is being furnished . . . treatment or care, to be properly accounted for by such chief officer and to be used for the benefit of the veteran.' Pub. L. 85-56, Title XV, Sec. 1503, June 17, 1957. 71 Stat. 137, 38 U.S.C.A. 3503(b)(3). See also 38 U.S.C.A. 739.

"It is apparent that the Veterans Administration, in the exercise of its discretion, is vested with the responsibility for determining the amount to be used or paid on account of his maintenance. Here the Veterans Administration has determined that not more than $40 per month shall be so used. The determination of the portion of the monthly gratuity to be used for the pensioner's maintenance is exclusively a federal matter, and when properly made by the Veterans Administration, is binding upon all concerned. The Commonwealth, through its Department of Welfare, has in effect, acquiesced in this practice. The Secretary of Welfare, by Executive Office Memorandum 1955-29, dated August 1, 1955, a copy of which is annexed, advised superintendents of state mental hospitals to comply with instructions given by the Veterans Administration '. . . as to the amounts which are to be used solely for the purchase of clothing and incidentals and the amount which may be applied to the cost of care and

maintenance'. It should perhaps be noted that while the Secretary's memorandum refers to instances 'Where an incompetent veteran without a guardian is hospitalized in a State mental institution . . .' so far as the payment of cost of care is concerned from federal pension funds, the presence or absence of a guardian is immaterial. In our view, the pension proceeds in the hands of the guardian are no less protected from the claims of creditors than are such funds not subject to guardianship."

Order affirmed.

Mr. Justice McBRIDE took no part in the consideration or decision of this case.