**STATE of Oklahoma, ex rel. EASTERN STATE HOSPITAL, Appellant,**

v.

**Clarence BEARD, Executor of the Estate of Dorothy May Beard Grings, Appellee.**

**No. 51201.**

Supreme Court of Oklahoma.

Sept. 11, 1979.

Kent Ryals, Vinita, for appellant.

John R. Carle, Carle & Tanner, Claremore, for appellee.

PER CURIAM:

The issue presented in this appeal is whether the District Court erred in ruling that funds derived from a United States Government pension and paid through the Veterans' Administration are exempt, under the terms of 38 U.S.C. § 3101(a) (1970), from the claim of Eastern State Hospital for the costs of care and treatment of a deceased veteran.

The veteran, Dorothy May Beard Grings, died, leaving one surviving child. Clarence E. Beard, Ms. Grings' duly appointed and qualified guardian, was appointed executor of her estate and caused statutory notice to creditors to be published. The State of Oklahoma, ex rel. Eastern State Hospital, filed a verified claim for treatment and services rendered to the veteran prior to her death.

The executor rejected the above claim and, at the hearing on the rejected claim, the parties entered into a stipulation of facts. The stipulation sets forth the dates of intermittent and residential care furnished by the State, covering a period from 1959 to 1975, and an itemized verified statement of account showing $6,547.50 due. The stipulation, further, declares that all assets remaining in the estate are derived from the pension paid as a gratuity from the United States Government. The executor alleged that 38 U.S.C. § 3101(a) (1970) [1] renders the funds exempt from the claims of creditors.

The courts have recognized that Veterans' Administration benefits are intended to provide for the surviving family of a veteran, as well as the veteran himself. The purposes of the exemption statute (§ 3101) are to protect the recipient of the benefits, and to afford some degree of security to the family and dependents of the recipient. *State v. Monaco*, 81 N.J.Super. 448, 195 A.2d 910 (1963); *In re Flanagan*, 31 F.Supp. 402 (D.D.C.1940).

It is further noted that "[t]hese payments are intended *primarily* for the maintenance and support of the veteran." *Lawrence v. Shaw*, 300 U.S. 245, 250, 57 S.Ct. 443, 445, 81 L.Ed. 623, 627 (1937) (emphasis supplied). The State of Oklahoma, in furnishing the incompetent veteran with care and maintenance in a state mental institution, was providing the very support her benefits were intended to cover. *In re Bemowski's Guardianship*, 3 Wis.2d 133, 88 N.W.2d 22 (1958).

Reimbursement to the State has been allowed for and enforced, in these circumstances, under the doctrine of *parens patriae* or by holding that the state mental hospital was performing, in effect, the duty of the guardian. *In re Bemowski's Guardian-*

---

1. § 3101. Nonassignability and exempt status of benefits

(a) Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable proc- ess whatever, either before or after receipt by the beneficiary. The proceeding sentence shall not apply to claims of the United States arising under such laws nor shall the exemption therein contained as to taxation extend to any property purchased in part or wholly out of such payments. The provisions of this section shall not be construed to prohibit the assignment of insurance otherwise authorized under Chapter 19 of this title, or of servicemen's indemnity.

*ship, supra; In re Bayly's Estate,* 95 Cal. App.2d 174, 212 P.2d 587 (1949). The courts of Arkansas, California, Illinois, Maine, Michigan, New York, and Wisconsin have held that Congress did not intend to classify states, which provide support in state institutions to incompetent veterans under guardianship, as "creditors" within the meaning of § 3101. *Cruce v. Arkansas State Hospital,* 241 Ark. 680, 409 S.W.2d 342 (1966); *In re Bayly's Estate, supra; Department of Public Welfare v. Sevcik,* 18 Ill.2d 449, 164 N.E.2d 10 (1960); *State v. Bean,* 159 Me. 455, 195 A.2d 68 (1963); *In re Lewis' Estate,* 287 Mich. 179, 283 N.W. 21 (1938); *Matter of Simpson,* 270 App.Div. 902, 61 N.Y.S.2d 529 (1946); *In re Bemowski's Guardianship, supra.*

Title 43A O.S.1971, § 111 provides that a claim of the State of Oklahoma, "[a]t the death of the patient . . . shall be allowed and paid as other lawful claims against the estate." However, we ascribe to the viewpoint, espoused in *In re Bemowski's Guardianship, supra,* 3 Wis.2d 133, 88 N.W.2d at 25, that it is "immaterial whether a particular state under its own law is required to proceed as a creditor to enforce such reimbursement." Accordingly, we follow the rationale of the above cases, and hold, as they do, that the State, under the circumstances of this case, is not a "creditor" within the meaning of § 3101.

The State of Oklahoma is attributed a special status in that it has provided the very support for which the veteran's benefits were intended, and in that it had no choice but to accept this veteran and provided necessary support. That is to say, the State, in the instant case, was engaged in a governmental function and could not, as a private individual or institution might,

refuse services prior to payment. 43A O.S. 1971, § 111; *In re Bemowski's Guardianship, supra.*

■ Based on the fundamental policy of protecting the incompetent against depletion of his estate, reimbursement is not allowed or provided for care and maintenance by a state prior to the appointment of a guardian for the deceased. *Savoid v. District of Columbia,* 110 U.S.App.D.C. 39, 288 F.2d 851 (D.C. Cir. 1961); *In re Bayly's Estate, supra.*

The case is reversed and remanded for a determination of, and reimbursement to the State for, actual cost of maintenance of the incompetent veteran for the period commencing with the appointment of her guardian and out of funds accruing after said appointment. *Savoid v. District of Columbia, supra.*[2]

Reversed and Remanded.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, BARNES, SIMMS, HARGRAVE and OPALA, JJ., concur.

DOOLIN, J., concurs specially.

DOOLIN, Justice, concurring specially:

Although I strongly support the result reached by the majority, I feel the majority opinion rests precariously upon the thin edge of a tenuous conclusion, namely that the state is not a creditor.

43A O.S.1971 § 111,[1] in my opinion makes the state a creditor. To hold that § 111 does not mean what it says in the plain, native vernacular leaves the law bewildered and confusing to the bar and public.

Various state as well as federal courts have dealt with problems concerning funds acquired from the Veterans' Administration

---

2. We attach no significance to that part of the stipulation of the parties setting forth an agreement with the Department of Mental Health of the State of Oklahoma and the Veterans' Administration regarding the acceptance of an agreed stipend and the State's waiver of additional compensation upon acceptance thereof. The agreement patently has no application to the facts in the case at bar, for by its terms it is limited to cases where the veteran has no child

or has had no guardian appointed. Both of these conditions are present in the instant case.

1. A patient . . . at an institution [defined in 43A O.S.1971 § 3(j) as any hospital to have the care, treatment or custody of a mentally ill or mentally retarded person] . . . within the department is liable for his care and treatment. The claim of the State for such care and treatment shall constitute a valid indebtedness.
. . . .

and administered by the Veterans' Administration with conflicting results. In *In re Bemowski's Guardianship, 3 Wis.2d 133, 88 N.W.2d 22 (1958); In re Lewis' Estate, 287 Mich. 179, 283 N.W. 21 (1938); Auditor General v. Olezniezak, 302 Mich. 336, 4 N.W.2d 679 (1942);* and *State v. Bean, 159 Me. 455, 195 A.2d 68 (1963),* these courts held funds in hands of executor are not exempt from claims of state, as state *is not a creditor* under § 3101.

To the same effect, see *Savoid v. District of Columbia, 110 U.S.App.D.C. 39, 288 F.2d 851 (D.C. Cir. 1961).* A like result is reached in *State v. Monaco, 81 N.J.Super. 448, 195 A.2d 910 (1963)* and in, *In re Buxton's Estate, 246 Wis. 97, 16 N.W.2d 399 (1944). Monaco* and *Buxton* hold pension money loses its exempt status upon the death of a veteran. Other courts have held that the exemption is lost as to investments made from such funds by a guardian, *Carrier v. Bryant, 306 U.S. 545, 59 S.Ct. 707, 83 L.Ed. 976 (1939).* See also *Trotter v. Tennessee, 290 U.S. 354, 54 S.Ct. 138, 78 L.Ed. 358 (1933).* The Commonwealth of Pennsylvania in, *In re Chojnacki's Estate, 397 Pa. 596, 156 A.2d 812 (1959)* arrives at an opposite conclusion finding that each entity, state or federal, is supreme in its area and that a state may not recover from the United States for hospital care furnished a veteran it owed him as an eligible citizen.

Some of the cases cited in the last paragraph are brought against living veterans filed against their guardians. Some are against the estates of deceased veterans for services rendered in state mental hospitals before death. Still other distinctions may be made, for some of these cases are brought under sections of the Veterans' code other than § 3101 or its predecessor, 38 U.S.C. § 454a, such as 38 U.S.C. § 3203.

I would not attempt to clarify or sort out the preceding cases, nor do I believe them to be exhaustive of the many problems present in this area. To me, they indicate the complexity of the question and that

honest differences, theories and approaches yield conflicting results. So be it.

I am persuaded the exemption granted in § 3101 does not ordinarily survive the veteran and would follow the reasoning of *In re Buxton's Estate, supra,* and *State v. Monaco, supra.*

The United States Supreme Court in *Pagel v. Pagel, 291 U.S. 473, 54 S.Ct. 497, 78 L.Ed. 921 (1934)* when dealing with insurance benefits due under WWI contracts held the exemption from creditors contained therein did not survive the death of the veteran and designated beneficiary. The case dealt with funds due under a "war risk insurance" contract. I am not unmindful of the differences between the contractual nature of the rights and benefits existing in and under "war risk insurance" matters which have been issued and paid for by the veteran and pension gratuities paid by the United States Government to veterans such as presented in the instant case. Suffice to say, I believe logic demands both types of funds lose their exempt status on the death of the veteran or designated beneficiary, as the case may be. I would refuse to exempt one and free the other from valid claims of creditors.

The majority limits recovery by the state to funds received after the appointment of a guardian,[2] which seems to ignore the source and status of the funds. We know from the stipulation that *all* funds in deceased incompetent's estate were derived from gratuities paid by the Veterans' Administration. The status and source is the same. I do not see a significant reason for the distinction imposed by the majority in this case when we know the incompetent had *no* other funds to protect from depletion until a veterans' award was made.

Since the case is remanded, I would instruct the trial court to give the defendant (executor) the right to refile his answer or to amend his answer striking from consideration the affirmative defense of 38 U.S.C. § 3101. I feel constrained, however, in the

---

2. See also 31 O.S. 1971 § 7 which seems to make such pension money exempt from levy, execution and attachment.

interest of "finality of judgment" to opine the state's cause of action is not barred by a Statute of Limitation; see 43A O.S. 1971 § 111.[3] Section 111 creates an exception to the provision found in 58 O.S. 1971 § 340.[4] Section 111 is an enactment assuring the state of sovereign immunity in this area.[5]

I am authorized to state that WILLIAMS and BARNES, JJ., concur in the views herein expressed.

---

3. 43A O.S. 1971 § 111:

   .  .  .  [The] claim of the state for such care and treatment shall constitute a valid indebtedness [not]  .  .  .  barred by any statute of limitation.  .  .  .

4. 58 O.S. 1971 § 340: No claim must be allowed  .  .  .  by the judge, which is barred by the statute of limitation.  .  .  .

5. See *State ex rel. Central State Griffin Memorial Hospital v. Reed*, 493 P.2d 815 (Okl.1972) where we have recognized the rationale of the state's claim to sovereign immunity but stated the state was subject to the nonclaim statute, 58 O.S. 1971 § 333.