423 A.2d 347

In re Vilma GRCICH.

Appeal of PITTSBURGH NATIONAL BANK.

In re ESTATE of Vilma GRCICH.

Appeal of PITTSBURGH NATIONAL BANK.

Supreme Court of Pennsylvania.

Reargued Sept. 25, 1980.

Decided Oct. 31, 1980.

W. Bryan Pizzi, II, Rosenberg, Sewak & Pizzi, Milton D. Rosenberg, Washington, for appellant.

Charles Skomski, Monessen, for appellee.

Robert S. Englesberg, Asst. Atty. Gen., Pittsburgh, amicus curiae for Dept. of Public Welfare.

Daniel J. Parent, Dist. Counsel, Pittsburgh, amicus curiae for U.S. Veterans Administration.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

In *Chojnacki Estate*, 397 Pa. 596, 156 A.2d 812 (1959), cert. denied, 363 U.S. 826, 80 S.Ct. 1595, 4 L.Ed. 1522 (1960), this Court unanimously approved the use of veterans' benefits as authorized by the Veterans Administration for the care and maintenance of an incompetent veteran in a Commonwealth institution. In considering " 'the unique nature of the fund and the statutory protections accorded such benefits during the lifetime of the veteran,' " this Court stated:

" 'It is clear that pension benefits paid by the Veterans administration to a veteran for total non–service–connected disability are a governmental gratuity, and the grant of such allowance to the veteran creates no vested right. The gratuity ". . . may be redistributed or withdrawn at any time in the discretion of Congress:" *Lynch v. U. S.*, 292 U.S. 571, 577 [54 S.Ct. 840, 78 L.Ed. 1434].' "

Id., 397 Pa. at 599, 156 A.2d at 814 (quoting orphans' court). Here the guardian of the estate of Vilma Grcich, with the Veterans Administration's approval and pursuant to court order, reimbursed the Commonwealth from veterans' benefits for institutional care and maintenance. In harmony with *Chojnacki* we conclude that the reimbursement was proper and that the guardian may not be surcharged.

From 1936 until her death in 1973, Vilma Grcich was hospitalized at the Torrance State Hospital, a facility operated by the Commonwealth. In 1955 Mrs. Grcich was formally adjudicated incompetent, and a corporate fiduciary was appointed as guardian of her estate.[1] Because one of her sons was a deceased veteran, she became the beneficiary of veterans' payments to provide for her care and support. From 1955 to 1970, the guardian did not pay the Commonwealth for Mrs. Grcich's care and support and instead allowed these veterans' funds to accumulate in her account. When in 1970 the Commonwealth requested reimbursement for the care and support of Mrs. Grcich, the guardian consulted the Veterans Administration, which by letter consented to payment from the accumulated funds.[2] The

---

1. The appointed guardian of the estate was Peoples First National Bank and Trust Co. As a result of bank mergers Pittsburgh National Bank became the successor guardian.

2. The guardian received a letter of March 10, 1971, from the Veterans Administration approving the expenditure of veterans' funds and advising only that some of Mrs. Grcich's assets be retained in her account. The undisputed testimony of Veterans Administration District Counsel, Daniel J. Parent, confirms beyond question that the Veterans Administration approved and ratified the payment to the Commonwealth from veterans' funds:

"Q. Now, as authority as Chief Counsel of the Veterans Administration, in your opinion, sir, did Pittsburgh National Bank have

guardian also petitioned the Court of Common Pleas of Washington County on two occasions for approval of payment pursuant to section 644 of the Incompetent's Estates Act.[3] That section provides in part:

"The court, for cause shown, may authorize or direct the payment or application of any or all of the income or principal of the estate of an incompetent for the care, maintenance or education of the incompetent . . . ."

In 1971 and again in 1972 the court determined that payment of the Commonwealth's claim was proper and accordingly issued two orders which "authorized and directed" the payment of a total of $10,483.00 to the Commonwealth. The guardian paid to the Commonwealth the full amount ordered, $10,035.00 of which was from accumulated veterans' benefits.

Following Mrs. Grcich's death in 1973, the guardian filed a final account in the Orphans' Court Division, Washington County Court of Common Pleas. The administrator of decedent's estate, on behalf of decedent's heirs, filed objections collaterally attacking the 1971 and 1972 court–ordered payments made from the incompetent's estate to the Commonwealth for Mrs. Grcich's support. The administrator argued before Judge Simmons in the decedent's estate proceeding that under 38 U.S.C. § 3101(a) veterans' benefits are protected from the claims of creditors and that therefore the previously court–ordered payments to the Commonwealth should not have been made and that the funds should instead have been retained for the benefit of the heirs. In

authority of the Veterans Administration to make the payment to Torrance State Hospital for Vilma Grcich?
   A. Yes, they certainly did.

    .    .    .    .    .

   Q. Did Pittsburgh National Bank in this case and with this disbursement that we're speaking of act with full acquiescence and permission of the Veterans Administration?
   A. Yes."

3. Section 644 of the Incompetent's Estates Act, Act of February 28, 1956, P.L. (1955) 1154, art. VI, 50 P.S. § 3644, was repealed by the Act of December 10, 1974, P.L. 867, § 19, and was replaced by identical language in section 5536 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S.A. §§ 101 et seq.

1978, despite the final and unappealed court orders of 1971 and 1972 by judges of competent jurisdiction coequal to Judge Simmons and despite the Veterans Administration's explicit approval of the payments by the guardian, Judge Simmons surcharged the guardian for the payments made pursuant to the previous court orders in the total amount of $10,035 plus interest. This appeal followed. After consideration and decision, this Court granted reargument. We now reverse.

To those receiving veterans' benefits Congress has granted a special protection under 38 U.S.C. § 3101(a):

"(a) Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary . . . . "

This provision assures that the recipient of veterans' payments is provided for during his or her lifetime and that the support funds are not diverted from their intended use by involuntary seizure or attachment. See *Chojnacki Estate*, supra. Recognizing the protection from judgment creditors afforded under 38 U.S.C. § 3101(a),[4] we nevertheless find nothing which would authorize the surcharge of a guardian who, with the consent of the Veterans Administration and court approval, uses veterans funds to pay the Commonwealth for the ward's care and maintenance. See *Stein's Estate*, 118 Pa.Super. 549, 180 A. 577 (1935), aff'd sub nom.

---

4. See *Watkins Estate*, 458 Pa. 662, 330 A.2d 534 (1974); *Chojnacki Estate*, supra. See also *Porter v. Aetna Casualty and Surety Co.*, 370 U.S. 159, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1962) (protection from judgment creditors extends to monies received and deposited in federal savings and loan account). But see *State v. Bean*, 159 Me. 455, 195 A.2d 68 (1963) (state providing care to incompetent not a creditor for purposes of section 3101).

*Hines v. Stein*, 298 U.S. 94, 56 S.Ct. 699, 80 L.Ed. 1063 (1936).[5]

If the view of the administrator and the hearing court were to prevail, the result would be that the payments for a beneficiary's support could not be used as Congress intended but would instead become a windfall gain to the heirs of the incompetent beneficiary. Surely the veterans payments gratuitously provided for the support, care and maintenance of the beneficiary may not be withheld from that use merely because the recipient has been declared incompetent.

The record is undisputed that only the Commonwealth provided and paid for the care and support of the incompetent, and therefore only the Commonwealth is entitled to be reimbursed from the veterans' funds for the incompetent's care. The heirs who contributed nothing to the cost of Mrs. Grcich's care during her many years in a state hospital are by no rule of law or equity entitled to have the Veterans Administration funds diverted from use for her care and instead made the basis of a huge windfall gift of inheritance to the heirs. The veterans' benefits were never intended to provide a gift for heirs and the funds were never granted for that purpose. Moreover, such a result may not be obtained by surcharging the corporate fiduciary as Judge Simmons did. Disallowing payment for the care and maintenance of the incompetent and instead utilizing veterans benefits to provide testamentary gifts to the incompetent's heirs is unsupported by federal or state law and is offensive to every principle of citizen–government fairness.

▮ The Legislature has carefully established a statutory procedure by which a guardian may obtain judicial review

5. Because the Veterans Administration, by its letter of March 10, 1971, and according to the testimony of Veterans Administration counsel, consented to the payment by the guardian of the Commonwealth's claim (see note 2, supra), we are not presented with the issue whether the Veterans Administration is entitled to maintain any control over benefits sent to and received by a guardian appointed by a state court. See *Hines v. Stein*, supra.

of proposed expenditures. The Commonwealth's statutory scheme placing upon the courts the responsibility for the "administration and distribution of ... property of the estates of incompetents ..."[6] leaves no doubt that payments made by a court–appointed guardian pursuant to court order may not, absent fraud, render the guardian individually liable. Although a fiduciary "must be held responsible for payments made without the approval of the court which turn out to have been improper," *Heaney v. Riddle*, 343 Pa. 453, 457, 23 A.2d 456, 459 (1942), there is no basis for liability where court approval has been obtained. In *Appeal of Halsey*, 120 Pa. 209, 214, 13 A. 934, 936 (1888), this Court held that the guardian of an incompetent's estate

> "was but the officer of the Court of Common Pleas, and all he did was done under the order and sanction of that court; neither can he be punished for its errors, if, indeed, any such there were.... His business was to obey the orders of his legal superior, and, having done so, he is entitled to protection."

Accord, *In re Guardianship of Sorrels*, 58 Ariz. 25, 40, 117 P.2d 96, 102 (1941); see *Free's Estate*, 327 Pa. 362, 194 A. 492 (1937); *White's Estate*, 322 Pa. 85, 185 A. 589 (1936); *In re Estate of Borntraeger*, 50 P.L.J. 336 (1903). No case in this Court has held a fiduciary individually liable when acting pursuant to a court decree. Our courts have always accorded a fiduciary acting under court decree this absolute and essential protection. Indeed, this principle forms the very foundation of the orderly and fair administration of estates by our courts. Were the law otherwise, petitions for court approval of an expenditure of estate assets or for any other purpose would be a total waste of judicial and professional resources and an exercise in futility.

**6.** Section 711(10) of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S.A. §§ 101 et seq.

The orders in the present case were issued by the court of common pleas pursuant to the jurisdiction granted in the Act of June 16, 1836, P.L. 784, § 13, 17 P.S. § 281. Such jurisdiction now lies in the orphans' court pursuant to 20 Pa.C.S.A. § 711(10).

■ The protection afforded by the court order flows directly from the well–established and far–reaching authority of state courts over court appointed guardians. See *Hines v. Stein*, 298 U.S. 94, 98, 56 S.Ct. 699, 701, 80 L.Ed. 1063 (1936). To deny this protection here would jeopardize the ability of our courts to satisfy their statutory mandate and would undermine the important Commonwealth interest favoring an orderly and efficient administration of an incompetent's estate.[7]

The decree of the orphans' court surcharging the guardian for judicially approved reimbursement to the Commonwealth for its cost in caring for and maintaining Mrs. Grcich is reversed. Each party to pay own costs.

FLAHERTY, J., did not participate in the consideration or decision of this case.

7. The claim that the guardian's use of veterans benefits to pay for the ward's care and maintenance violated federal policy and that the appointment of the guardian and court–ordered payment violated due process and state law does not affect the guardian's protection from liability for acting in compliance with a court order.

Our decision today is in harmony with that of the three–judge district court in *Vecchione v. Wohlgemuth*, 377 F.Supp. 1361 (E.D.Pa. 1974), on motion to vacate, 426 F.Supp. 1297 (1977), aff'd, 558 F.2d 150, cert. denied, 434 U.S. 943, 98 S.Ct. 439, 54 L.Ed.2d 304 (1978). *Vecchione* held unconstitutional the direct seizure by the Commonwealth of the income of persons confined in state mental facilities. The district court held, inter alia, that under the due process clause a beneficiary may not be deprived of control of his or her income without a prior adjudication of incompetency. Here the guardian made payments reimbursing the Commonwealth for the cost of care and maintenance of Mrs. Grcich following an adjudication of incompetency and pursuant to valid final orders of court. The ultimate issue in this case is only the liability of a guardian acting pursuant to court order and a court decree of incompetency, not the liability of the Commonwealth acting without any judicial process.