## Christinis Estate

*Robert S. Englesbert, Deputy Attorney General,* for Commonwealth.
*Mark W. Vita,* for administrator.

TERPUTAC, *J.,* February 6, 1981—The essential facts have been stipulated by the parties. Decedent, John J. Christinis, was a patient during his lifetime at Torrance State Hospital, a state owned mental health facility, from December 5, 1952 until his death on July 6, 1976. While Mr. Christinis was a patient at the state facility, he was provided all of his basic necessities. The assets of decedent consist of social security benefits and accrued interest upon which the Commonwealth of Pennsylvania has filed a claim in the amount of $4,617.18 for care and maintenance which was furnished to him from July of 1974 to the time of his death. The accuracy of the claim is not in dispute. Since the claim of the Commonwealth is predicated upon the Mental Health and Mental Retardation Act of October 20, 1966, P.L. (Sp. Sess.) 96, 50 P.S. §4101 et seq., the sole issue before the court is whether the assets of the estate are exempt from the Commonwealth's claim by virtue of the exemption provisions contained in the Social Security Act of August 14, 1935, 49 Stat. 624, as amended, 42 U.S.C.A. §407, which provides:

"The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or

to the operation of any bankruptcy or insolvency law."

Under ordinary circumstances the fund in dispute would be disbursed solely in accordance with Pennsylvania law. However, since the Social Security Act is a Federal statute which purports to cover the subject, it would control.

The leading case respecting the instant issue is Philpott v. Essex County Welfare Board, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed. 2d 608 (1973), which upheld the section 407 exemption against an agreement a welfare recipient had signed with the State of New Jersey to reimburse the state from social security benefits to be received. In the instant case, the estate concedes that Philpott is not directly in point since that case dealt with a living recipient while the case at bar seeks to protect a decedent's estate assets and urges the court to extend the exemption for three reasons.

## I

On behalf of the estate, it is contended that the wording of section 407 does not limit the extent of the exemption to living beneficiaries and that it is absolute and unequivocal.

There is a dearth of cases interpreting this statute in this Commonwealth. Accordingly, we turn to the Federal cases, upon which we must rely, and interpretations by sister states.

"The purpose of social security benefits for the disabled is to provide for their care and maintenance. The purpose of the social security exemption is to protect social security beneficiaries from creditors' claims . . . [T]his exemption evinces a clear legislative purpose of precluding beneficiaries

from diverting their social security payments away from the statute's seminal goal of furnishing financial, medical, rehabilitative and other services to needy individuals." Department of Health and Rehabilitative Services, State of Florida v. Davis, 616 F. 2d 828, 831 (5th Cir. 1980).

The intent of the exemption is to ensure that recipients receive their benefits. As stated in a recent case interpreting a similarly worded exemption for veteran's benefits under the Act of September 2, 1958, 72 Stat. 1229, as amended, 38 U.S.C.A. §3101(a), it is "for the care and maintenance of the recipient and [is] not designed to provide a windfall inheritance to heirs of the deceased." In re Estate of Pierce, 492 Pa. 10, 421 A. 2d 1065, 1066 (1980). See, also, In re Grcich, 492 Pa. 210, 423 A. 2d 347 (1980).

The terminology of the exemption statute is designed to "protect the [beneficiaries] and those dependent upon him from the claims of creditors," Brown v. Brown, 32 Ohio App. 2d 139, 288 N.E. 2d 852, 853 (1972), because the payments are considered vital to the living standards of the recipient and his dependents. However, Department of Health and Rehabilitative Services, State of Florida v. Davis, supra, interpreted the section 407 exemption not to apply to a living social security recipient since that recipient was totally dependent on a state hospital for his care and maintenance, thus distinguishing Philpott, where the recipient could partially provide for his own care. And in Brown v. Brown, supra, and Meadows v. Meadows, 619 P. 2d 598 (Okla. 1980), the exemption was construed so as not to apply to a claim for the support of the recipient's dependents. Here the representative of the estate concedes that there are no dependents

claiming the fund. To this extent the argument of the estate must fail.

## II

Next, the estate argues that because the benefits have remained in the form of moneys paid by social security (in a guardianship account at the hospital and in a savings account maintained by the estate) and since such moneys have not been permanently reinvested, the beneficiaries of decedent should be entitled to carry the section 407 exemption after the death.

"Although the social security benefits retain their distinctive character in a traceable bank account, once they pass to the estate of the recipient they lose that characteristic. Accord, State v. Monaco, 81 NJ Super. 448; 195 A. 2d 910 (1963), State v. Wendt, 94 Ohio App 440; 116 NE 2d 30 (1953). This is because the recipient and the recipient's estate are different 'persons' even though the latter is a mere continuation of the former." Estate of Vary, 65 Mich. App. 447, 452, 237 N.W. 2d 498, 500 (1975), aff'd, 401 Mich. 340, 258 N.W. 2d 11 (1977), cert. denied, 434 U.S. 1087, 98 S.Ct. 1283, 55 L.Ed. 2d 793 (1978).

We agree with the estate that these funds did not lose their character as social security benefits when placed in the guardianship account and were still potentially protected by section 407 since they were being held for the benefit of the recipient. However, when the different "person" of the representative of the estate came to control these funds, the moneys no longer needed the protection of the mantle of the statute. Indeed the character of the protected social security benefits was lost when the funds were no longer held to further the statute's

"seminal goals." Department of Health and Re-habilitative Services, State of Florida v. Davis, supra.

## III

Finally, the estate posits its last line of defense on the argument that the section 407 exemption is also designed to protect the dependents of the recipient. To that extent, that position is correct: Brown v. Brown, supra. However, the estate admits that John P. Christinis had no dependents. Hence, we are not dealing with a situation where the competing claims — on the one hand the Commonwealth and on the other hand the spouse or children of the recipient—must be balanced. We refuse to paint with the broad brush urged by the estate. Although the orphans' court division has all of the legal and equitable powers which are required in the exercise of its jurisdiction, Estate of Damario, 488 Pa. 434, 412 A. 2d 842 (1980), we are constrained to hold that our equitable powers should not be invoked to extend the statute to the extreme position advanced by the estate. In a case similar to the instant case, it was held: "The purpose of Section 407 is to insure that an annuitant will always have a source of income to provide for his own maintenance and support. Upon his death, the necessity no longer obtains. Congress surely did not intend that the immunity from suit should result in a windfall for the heirs." Hughes Estate, 24 Fiduc. Rep. 331, 335 (1974). It seems to us to be highly inequitable for the heirs in this estate to receive such a gift, especially at the expense of the entity which supplied the needy social security recipient with the care and maintenance he required during his lifetime.

In summation, we agree with the rationale of the

Michigan Supreme Court in Estate of Vary, 401 Mich. 340, 352, 258 N.W. 2d 11, 16 (1977), cert. denied, 434 U.S. 1087, 98 S.Ct. 1283, 55 L.Ed. 2d 793 (1978).

"Philpott . . . may be all encompassing as to legal process directed against deposits of a living beneficiary, but neither the facts of the case nor the wording of that Court refer to accumulated social security moneys after death. To strain the meaning so as to 'protect' such funds after death leads to absurdities, conflict of state and Federal laws and injustice not only to those who might have extended needed credit (and others), but to the social security recipient who could anticipate a curtailment of credit upon such an interpretation."

## DECREE NISI

And now, February 6, 1981, the administrator D.B.N. of the Estate of John J. Christinis, deceased, is hereby ordered and directed to pay the duly assessed charges of the Commonwealth of Pennsylvania for the care and maintenance of John J. Christinis from July of 1974 to July of 1976 in the amount of $4,617.18. Unless exceptions are filed within ten days, this decree nisi shall become final.